And at this time, we'll hear Boyd v. NYCTL 1996-1 Trust. We'll just wait a moment while the exodus continues. There seems to be some diminished interest in your argument. Please don't take it personally. At least give me a chance. We're very interested. Mr. Grubin. Good morning, Your Honors. Paul Grubin for appellants. In what appellants believe to be a judicial first, the lower court found that res judicata barred appellant state claims in this action because the appellants purportedly could have alleged the facts necessary to support the $5 million jurisdictional minimum necessary for CAFA jurisdiction they instituted the first Boyd action, which we'll call Boyd 1 in 2005, or on a motion to amend the complaint while that action was pending. While the court recognized that appellants' allegations in this case, that CAFA jurisdiction existed, were based on conduct which occurred and damages which accrued after the first case was commenced, the court found that it was the appellant's burden to show that they could not have pled facts demonstrating the CAFA jurisdictional minimums at the time they filed the complaint in Boyd 1. The court also found that even if the appellants could not have pled CAFA jurisdictional requirements in 2005, res judicata still applied because appellees could have asserted CAFA jurisdiction based on the later conduct and subsequent damages when in an amended complaint. The court offered no explanation to support any of these summary findings. Now, we believe that there are several errors in... Why couldn't CAFA have been advanced in the first litigation? You had... You alleged thousands of dollars that your clients lost, each one of them, and then you said there were thousands of people who were in the same boat. So you're dealing now with millions and millions of dollars. Well, Your Honor, number one, we did not allege that there were thousands of dollars lost in the Boyd 1 action. Actually, the two bases for the damages alleged in Boyd 1 were a debt cancellation fee of $250 and interest, which resulted from the trusts overcharging an amount and then subsequently refunding that amount several months later. The named plaintiffs were claiming to have lost thousands of dollars in fees and costs? I don't believe there was any such allegation. There was no such allegation in Boyd 1. No, there wasn't. And there was an allegation that, and I think it was upon information and belief, that there were thousands of people who were in the same situation. But even looking at it retrospectively, if you assume thousands includes, let's say, 2,000 people, and the plaintiffs had no basis for actually determining at the time Boyd 1 was instituted exactly how many people or how much damages existed at that point, you'd still only get, based on this $250 charge and the interest, you'd still only get to, if there were 2,000 people, 500,000. The point is that federal courts are courts of limited jurisdiction and that when you attempt to invoke that jurisdiction, you've got to not only have good faith allegations, but if that is contested, you have to show by a preponderance of the evidence that the $5 million jurisdictional minimum was met. There were no circumstances and no knowledge that the individual plaintiffs in this case could have possibly known about in May 2005, which would have allowed them to have met that jurisdictional minimum. In fact, many of the bases for the $5 million claim in this case are even subject to differing interpretations by courts. The question of whether attorney's fees, which accrued after the commencement of an action, can be used to satisfy the CAFA jurisdictional minimum, I think the weight of the law is that they can, but there are certainly decisions to the contrary. But beside that point, the courts, both for purposes of jurisdiction and for purposes of res judicata, establish a bright-line rule that the examination needs to take place at the time the first action is instituted. We're dealing with a situation, as we indicated, where in the 10 years between the filing of Boyd 1 and the filing of the second action, there were hundreds of additional potential class members who paid these amounts, which we believe are unlawful, and the accumulation of hundreds of thousands, if not millions of dollars in attorney's fees and expenses, which form the basis for our ability to assert that CAFA jurisdiction exists in this action, but did not exist in Boyd 1. In terms of that bright-line rule, this court, as every court has indicated, could not be clearer that the time to assess res judicata and the time to assess subject matters jurisdiction and the amount in controversy is as of the time of the first complaint. And there is absolutely no evidence in the record, none, which shows that the plaintiffs herein could have asserted the $5 million jurisdictional minimum. In fact, the trusts, in attempting to prove this, have to go outside of the record and cite to the complaint in Boyd 1, which is not in the record, to make this simply based on the fact that the complaint in Boyd 1 said that there were thousands, and many of these claims in Boyd 1 were upon information and belief, but they have to go outside of the record in order to suggest, based on a piece here, a piece here, a piece there, that the plaintiffs in Boyd 1 might have been able to assert the $5 million minimum at the time Boyd 1 was instituted. In terms of the errors, first, the court, as we indicated, applied the wrong standard. The court found that it was the plaintiff's burden to establish that they did not have the facts necessary to allege CAFA's $5 million jurisdictional minimum at the time Boyd 1 was instituted, not the defendant's burden to demonstrate that those facts existed. Now, that's in violation of well-settled rules under CAFA and res judicata. As this court said in Blockbuster, under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it by a preponderance of the evidence showing that there is a reasonable probability that the jurisdictional minimums could have been met. You've reserved a couple minutes for rebuttal? Yes, we have. We'll hear you then. Okay, thank you. Good morning, Your Honors. Julie Steiner, the attorney for the trust defendants. The district court correctly dismissed plaintiff's state law claims as barred by res judicata. The court did not make any improper burden shifting in this case. The trust defendants met their burden on res judicata by demonstrating, not with anything outside of the record, but by pointing to, and it must on such a case, that the complaint in Boyd 1 and the complaint in Boyd 2 demonstrate that both cases arise out of the same series of transactions, share a common nucleus of operative fact, and that, therefore, they could have asserted CAFA jurisdiction in 2005. The court did not give them any burden to do. However, on their motions for reconsideration, they brought forward evidence to say, no, we couldn't have raised CAFA jurisdiction in 2005, and it was only then that the court said, you failed to show that you couldn't have raised CAFA then. The court made an explicit finding at page, I believe it is 196 in the record, and at 193 in the record, twice, that CAFA was fully available to them in 2005 and that the complaints themselves, objective evidence showed that they could have asserted CAFA in 2005. Without anything else, without any evidence that the complaints are different or that the facts are different or that anything changed, we have demonstrated res judicata. They don't have to put anything in in opposition, but if they want to show that res judicata does not apply, they should come forward with evidence, and the court found on their motions for reconsideration that the evidence that they came forward with was speculative or not factually supportable, that it really showed that they just forgot in 2005 to raise CAFA, which had just come into effect three months prior, and that they're coming up with something now to say, hey, wait a minute, I should have done it. How did the complaints demonstrate that the $5 million in controversy requirement was met? In both complaints, which I want to raise the point that we did not go outside of the record. At page 96 of the record, we clearly assert and make sure that the court goes to and sees the Boyd 1 complaint, amended complaint, and second amended complaint. So clearly, this is a nonissue. We did raise the issue of the first complaint. When you look at the first complaint, it goes through each of the named plaintiffs saying that there are thousands. First, it says that there are thousands of members, and as in any class action, you don't know who your total number of people are at that time, so it's thousands. Then with these named plaintiffs, they go through the amount of money that each one overpaid or that they claim was overpaid. For instance, if you look at Boyd 1's complaint at page 17, it indicates that Ms. Taylor was charged $2,383 more than what she was supposed to pay. With Ms. Waters on page 19 of the complaint, over $5,000 more than what she should have paid. Again, what we need is a reasonable probability. And when you have thousands of members, and each one is paying thousands, 5,000, again, something that we do not have, we're not privy to. So we're basing this simply on the first complaint, as however plead, however inartfully or artfully pledged it was, there is a reasonable probability that they could have raised CAF at that point based upon a reasonable probability that $5 million was met. Especially given that the complaint now, in 2015, is virtually identical with the same thousands of members and the same thousands of dollars that were allegedly overpaid. And so, given that we proved res judicata, and on their motion for reconsideration, they failed to show that they could not have raised CAF, the district court correctly dismissed their state law claims. Thank you. Thank you. We'll hear from. Just a few points. First, when counsel discusses the alleged damages and the thousands of dollars, she neglects to mention that, and this is outside of the record, this is the Boyd 1 complaint. But the crux of the allegation. Why is that outside the record? I don't believe it is in the record, nor was it raised below. It certainly is something you would look at to try to find out whether you could have pled CAF. Well, none of these, all I'm saying, Your Honor, is that none of these arguments were before the judge below. The judge cited to none of this. So none of this formed the basis for Judge Kogan's decision. But more importantly, the improper amounts, the crux of that claim is that they charged these improper amounts. They overcharged. Those amounts are refunded. And the damages that were claimed in Boyd 1 were based on the interest that should have, was owed based on the amount of time that they held these improper amounts. So the idea that in Boyd 1 we were claiming that they overcharged thousands of dollars in legal fees, which they kept, is completely illusory and is not based on the allegations in the complaint. And that is the fundamental basis for this argument that somehow you take thousands and they allege there were thousands of dollars in damages. They did not allege that there were thousands of dollars in damages, nor could they at that point. Nor could they possibly have alleged the $5 million jurisdictional minimum at that point. And finally, I point to this court's decision in Blockbuster, which is that in terms of coming up with the jurisdictional minimum, the party that's asserting that CAFA jurisdiction exists and a court finding that CAFA jurisdiction exists, cannot just take numbers and theories out of thin air. As this court said in reversing the district court's finding that the $5 million jurisdictional minimum was met, the district court made no findings and offered no explanation as to how it calculated the amount in controversy here to be more than $5 million. Thank you. Thank you. Thank you both. We'll reserve decision.